## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| CHERYL L. PERKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 6:14-CV-1617-SLB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Cheryl L. Perkins brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's final decision denying her application for a period of disability and disability insurance benefits [DIB]. Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

On February 14, 2013, Ms. Perkins protectively filed a Title II application for a period of disability and DIB, alleging that she became unable to work on April 6, 2010. (Doc. 7-3 at R.22; doc. 7-6 at R.200.)[1] She reported that was unable to work because of sacroiliac joint syndrome, irritable bowel syndrome [IBS], interstitial cystitis [IC], polycystic ovary

---

[1]Reference to a document number, ["Doc."], refers to the number assigned to each document as it is filed in the court's record. Reference to a page numbers in the Commissioner's record, ["R."], refers to the page number assigned to the record by the Commissioner.

syndrome [PCOS], pelvic congestion syndrome [PCS], anxiety attacks, depression, high blood pressure, acid reflux, and varicose veins in her pelvic area.  (Doc. 7-7 at R.246.)

The Commissioner denied her application initially, and Ms. Perkins requested a hearing before an Administrative Law Judge [ALJ].  (Doc. 7-5 at R.93, R.99.)  The hearing before the ALJ was held on January 6, 2014.  (Doc. 7-3 at R.22.)

After the hearing, the ALJ issued an unfavorable decision on February 26, 2014. (Doc. 7-3 at R.22-35.)  Ms. Perkins asked the Appeals Council to review the ALJ's decision, and she submitted additional evidence.  (*Id*. at R.10, R.12-18.)  The Appeals Council denied Ms. Perkins's request for review of the ALJ decision, stating that it "found no reason under [its] rules to review the [ALJ's] decision." (*Id*. at 1.)  Therefore, "the [ALJ's] decision is the final decision of the Commissioner of Social Security in [Ms. Perkins's] case."  (*Id*.)

Ms. Perkins filed an appeal in this court on August 19, 2014.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one, "limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that

of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB.  *See* 20 C.F.R. § 404.1520; *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

3

expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful employment."  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2]  20 C.F.R. § 404.1572.  If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b).  "Under the first step, the claimant has the burden to show that she is not

---

[2]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572(a)-(c).

currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[3]

The ALJ found that Ms. Perkins had not engaged in substantial gainful activity during the period from her alleged onset date, April 6, 2010, through the date of the ALJ's decision, February 26, 2014.  (Doc. 7-3 at R.24, R.35.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Perkins had severe impairments of –

a history of endometriosis/pelvic floor myalgia status post cystoscopy with hydro-distention and hysteroscopy with resection of uterine septum and laparoscopy with surgical excision of endometriosis in May 2010, pelvic congestion syndrome, status post laparoscopic excision of pelvic endometriosis and supracervical hysterectomy and bilateral salpingo-oophorotomy in August 2012, interstitial cystitis (IC), a history of sacroiliac joint syndrome, and obesity.

(Doc. 7-3 at 24.) Also, the ALJ found Ms. Perkins's mental impairments of anxiety and depression were not severe. (*Id.*)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement[4] and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as

---

[4]"Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909.

to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Perkins "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Doc. 7-3 at R.26.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [her] past relevant work. 20 C.F.R. § 404.1560(b). Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for her to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 404.1520(e). The claimant bears the burden of establishing

that her impairment prevents her from performing past work.  *Reynolds-Buckley*, 457 Fed.

Appx. at 863.

The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b).[5]  She can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds.  She can stand and/or walk in combination, with normal breaks, for at least 6 hours during an 8-hour workday and sit, with normal breaks, for up to 8 hours during an 8-hour workday.  The claimant can occasionally climb ramps and stairs and she should never climb ladders, ropes, or scaffolds.  The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibration.  The claimant should avoid all exposure to industrial hazards, including working at unprotected heights and working [in] close proximity to moving dangerous machinery.

(Doc. 7-3 at R.26 [footnote added].)  Based on her finding regarding Ms. Perkins's RFC and

the testimony of a vocational expert [VE], the ALJ found that Ms. Perkins was able to

perform her past relevant work as a loan processor and an office clerk.  (*Id*. at R.35.)

---

[5]Section 416.967(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  . . .

20 C.F.R. § 416.967(b).

Therefore, the ALJ found that Ms. Perkins had not been under a disability at any time from April 6, 2010, the alleged onset date, through February 26, 2014, the date of her decision. (*Id*.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1). The regulations provide:

> (1) If we find that your residual functional capacity does not enable you to do any of your past relevant work . . ., we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case. . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).
>
> (2) In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

*Id*. (c)(1)-(2). If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled. 20 C.F.R. § 404.1520(g).

Because she found that Ms. Perkins was able to perform her past relevant work, the

ALJ did not consider whether Ms. Perkins was capable of adjusting to other work.

## B. ISSUES ON APPEAL

Ms. Perkins states her issues on appeal as follows:

1.   Whether the ALJ erred by failing to follow her finding[ ] that Claimant had a residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) when the hypothetical question posed to the vocational expert was [she] should consider that the claimant could perform a full range of light work.

2.   Whether the Appeals Council erred by not remanding the claim to the [ALJ] since the Appeals Council received evidence of excessive breaks that supplemented the evidence of excessive breaks testified to by the Claimant.

3.   Whether the ALJ erred by not setting forth reasons to ignore the testimony of the vocational expert that if excessive breaks were required during an eight hour work day that no jobs would be available.

(Doc. 10 at 1.)  For the reasons set forth below, the court finds that the decision to deny Ms.

Perkins's claim for a period of disability and DIB is due to be affirmed.

### 1.  Vocational Expert Testimony

"A vocational expert is an expert on the kinds of jobs an individual can perform based

on his or her capacity and impairments.  When the ALJ uses a vocational expert, the ALJ will

pose hypothetical question(s) to the vocational expert to establish whether someone with the

limitations that the ALJ has previously determined that the claimant has will be able to secure

employment in the national economy."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.

2004).  "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose

a hypothetical question which comprises all of the claimant's impairments." *Id*. n.7 (quoting *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)(citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987))).

Ms. Perkins alleges two errors with regard to the ALJ's use of a vocational expert: (1) she contends the ALJ's hypothetical to the VE did not accurately describe her limitations because the hypothetical to the VE asked her to assume Ms. Perkins could perform a full range of light work,  and (2) she contends the ALJ erred in failing to follow the VE's testimony that she could not perform her past relevant work due to her need for frequent breaks.

With regard to Ms. Perkins's RFC, the ALJ found the following limitations:

1.  "She can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds."  (Doc. 7- at R.26.)

2.  "She can stand and/or walk in combination, with normal breaks, for at least 6 hours during an 8-hour workday and sit, with normal breaks, for up to 8 hours during an 8-hour workday."  (*Id*.)

3.  "The claimant can occasionally climb ramps and stairs and she should never climb ladders, ropes, or scaffolds."  (*Id*.)

4.  "The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl."  (*Id*.)

5.  "She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibration."  (*Id*.)

6.  "The claimant should avoid all exposure to industrial hazards, including working at unprotected heights and working [in] close proximity to moving dangerous machinery."  (*Id*.)

(Doc. 7-3 at R.26.)  The ALJ's included each of these limitations in her hypothetical to the VE:

> Q.  [ALJ]  . . .  Dr. Euto, I'm going to ask you to assume, for hypothetical purposes number one, a hypothetical individual of the same age, education and work experience as the Claimant.  I'm going to ask you to further assume that such a hypothetical individual could [1] occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. [2] She could stand and/or walk with normal breaks for at least six hours during an eight-hour workday and she could sit with normal breaks for up to eight hours during an eight-hour workday; [3] could occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds.  [4] She could frequently balance and occasionally stoop, kneel, crouch and crawl.  [5] She should avoid concentrated exposures to the extreme heat, extreme cold, wetness, humidity and working in areas of vibration.  [6] Should avoid exposure to industrial hazardous including working at unprotected heights, working in close proximity to moving, dangerous machinery.  Given those functional limitations, could such a hypothetical individual perform any of [Ms. Perkins's] past work as it was actually or customarily performed?
>
> A.  [VE]  Yes, Your Honor, the loan processor [and] the office clerk.
>
> Q.  Would these allow for her work to be performed as actually performed, generally performed or both?
>
> A.  Both, Your Honor.

(Doc. 7-3 at R.71.)[6]  Because the hypothetical contained all the limitations on Ms. Perkins's ability to work found by the ALJ, the VE's testimony provides substantial evidence supporting the ALJ's decision that Ms. Perkins could perform her past relevant work as a loan processor and an office clerk.

---

[6]The ALJ did not ask the VE to assume the individual could perform a full range of light work as Ms. Perkins contends.  (*See* doc. 7-3 at R.71; doc. 10 at 12.)

Ms. Perkins also contends that the ALJ erred in finding she could perform her past relevant work, despite her limitations, because the VE testified, in response to counsel's questioning, that a person with the need for frequent breaks could not perform the jobs of loan processor and/or office clerk.  Indeed, the VE testified:

> Q.  [Ms. Perkins's Counsel]  . . . [S]ome of the jobs they've identified as skilled, some of them are semiskilled and some are unskilled – how does the scheduled breaks come into play?
>
> A.  [VE]  Well, still, through the, as described from the Department of Labor for the State of Alabama, you're looking at two, 15-minute breaks – one in the morning, one in the afternoon and then normally you're looking at a half hour for lunch.
>
> Q.  Okay.
>
> A . That's still pretty standard across the skill levels.
>
> Q.  Yeah.  That applies whether it's skilled, unskilled or –
>
> A.  It truthfully does.  It's just, the difference basically is the closeness to the restroom, if that's what you're inferring.
>
> Q.  Yeah.  If you have a person who has to go for bathroom breaks 40 times during an eight-hour workday, is that going to be considered excessive breaks?
>
> A.  Well, how much time are we saying she would need for each?
>
> Q.  Like five to eight minutes each time?
>
> A.  Yeah.  We're talking close to two hours of additional breaks, above and beyond, and *that would preclude all work activity*.

(Doc. 7-3 at R.73-74 [emphasis added].)  However, the ALJ did not find Ms. Perkins's testimony regarding her need for frequent bathroom breaks to be credible; she found:

> At the hearing, the undersigned notes the claimant stated she had IC [interstitial cystitis] and she needed to urinate 20 times in the morning and 20 times in the afternoon.  There is nothing in the objective medical record to support these subjective allegations.  The claimant has not seen a urologist and she stated that Dr. Childs treats her for all of her pelvic and urinary problems.  Dr. Childs'[s] diagnosis of IC was based upon surgical findings and the undersigned notes that the claimant is not on any medication for urinary frequency.  Moreover, the objective medical evidence further states she has experienced good results with her bladder problems following her surgical procedures and urinalysis have been negative.  There is no evidence of uncontrolled urination or the need to urinate as frequently as alleged at the hearing.  While the undersigned does find her bladder leakage could be exacerbated by heavy lifting and straining, the claimant's limitations to light work activities, as allowed by Dr. Childs following both surgical procedures, would address this problem and otherwise prevent ongoing problems.

(Doc. 7-3 at R.34.)  Because the ALJ did not credit Ms. Perkins's allegations regarding her need for frequent breaks, the court finds no error in the ALJ's failure to rely on the VE's testimony that Ms. Perkins could not perform any work because of her need for frequent bathroom breaks.  "[T]he ALJ was not required to include findings in the hypothetical that [she] had properly rejected as unsupported."  *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Based on the foregoing, the court finds no error based on the ALJ's decision to rely on the VE's testimony that an individual with Ms. Perkins's limitations and vocational factors could perform the jobs of loan processor and office clerk.

### 2.  Appeals Council

Ms. Perkins contends that the Appeals Council erred by failing to remand her case based on the additional evidence of her frequent bathroom breaks submitted after the ALJ's decision.

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process." *Id*. at 1261 (citing 20 C.F.R. § 404.900(b)). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (quoting 20 C.F.R. § 404.970(b)). "The new evidence is material if 'it is relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Watkins v. Astrue*, 925 F. Supp. 2d 1257, 1263 (N.D. Ala. 2013)(quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). The new evidence "is chronologically relevant if 'it relates to the period on or before the date of the [ALJ's] hearing decision.'" *Id*. (quoting 20 C.F.R. § 404.970(b)).

The new evidence submitted by Ms. Perkins is her handwritten list of the times and purposes of numerous bathroom visits on March 5-7, 2014.  (Doc. 7-3 at R.15-18.)  The

ALJ's decision is dated February 26, 2014.  (*Id.* at R.35.)  Therefore, the new evidence is not chronologically relevant.[7]  The court finds no reversible error.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 22nd day of February, 2016.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

---

[7]The court also notes that the evidence, Ms. Perkins's listing of the number of times she visited the bathroom, is cumulative of the testimony she gave and is not material as it does not address the ALJ's reasons for not crediting her subjective testimony.

16